## HART-KRAFT MOTOR COMPANY *v.* INDIANAPOLIS MOTOR CAR COMPANY.

[No. 22,233. Filed June 3, 1915.]

1. SALES.—*Fitness of Article.—Implied Warranty.*—On a sale of a machine by a manufacturer to a dealer there is usually an implied warranty that it is reasonably adapted to the purpose for which it was purchased. p. 317.

2. SALES.—*Contracts.—Express Warranties.—Merger of Implied Warranties.*—The express terms of a warranty in a written contract of sale can not be varied or contradicted by parol, and as

312     SUPREME COURT OF INDIANA,

Hart-Kraft Motor Co. v. Indianapolis Motor Car Co.—183 Ind. 311.

a general rule all implied warranties are merged in the contract, except where the implied warranty is wholly independent of the matter contemplated in the warranty expressed in the contract. p. 317.

3. SALES.—*Express Warranties.—Implied Warranty of Fitness.—* *Pleading.—*In an action for the purchase price of automobile parts, a counterclaim setting up a contract giving to defendant the right to sell certain automobiles in a territory embracing nearly the whole State, alleging the execution of a guarantee by plaintiff applicable only to such of its make of automobiles as were to be maintained by defendant under a maintenance contract between defendant and its patrons in a territory limited to five miles from a designated point, whereby plaintiff guaranteed all parts, except rubber tires, against inherent defects and breakages of defective parts and agreed to make replacement free of charge, and alleging that automobiles purchased from plaintiff were defective, that plaintiff failed to replace defective parts, and that such automobiles were wholly unfit for the purposes intended, etc., showed that the implied warranty of fitness was not excluded by the terms of the contract, and sufficiently pleaded a breach thereof. p. 317.

4. APPEAL.—*Review.—Invited Error.—Instructions.—*Error, if any, in the giving of an instruction on a matter alleged to have been outside the issues is unavailable where it appears to have been invited by appellant requesting an instruction on the same subject. p. 318.

From Superior Court of Marion County (79,930) ; *Joseph Collier*, Judge.

Action by the Hart-Kraft Motor Company against the Indianapolis Motor Car Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*William A. Pickens, Linton A. Cox* and *Earl R. Conder,* for appellant.

*John W. Holtzman* and *Lewis A. Coleman,* for appellee.

MORRIS, J.—Suit by appellant, a corporation, against appellee, a corporation, on account, for automobile parts. The amount demanded was less than $300. Appellee filed two paragraphs of counterclaim in each of which damages were demanded in the sum of $10,000. In what is termed the second amended first paragraph of amended counterclaim

MAY TERM, 1915.                313

Hart-J aft Motor Co. v. Indianapolis Motor Car Co.—183 Ind. 311.

appellee alleges that prior to March 5, 1909, it was engaged in selling commercial motor cars in Indianapolis and throughout Indiana, and specially engaged in selling a commercial car manufactured by the Rapid Motor Vehicle Company, for sale at the minimum price of $1,850, and in the sale of which appellee had a lucrative business; that in connection with its business appellee maintained a garage where it kept cars of its Indianapolis purchasers, when not in use, under printed contracts a form of which is set out, and which provides that, for a certain consideration appellee agrees to keep the car in running order, and the machinery thereof in proper adjustment, provided that the car is placed in the garage every night, and to furnish an emergency car, free of charge in case of breakdown in the city, and to keep up all repairs caused by defective workmanship or materials, excepting tires. This form of contract prohibits the owner from making any mechanical adjustments of his car, and applies only to cars operated within five miles of Monument Circle in Indianapolis. The paragraph further alleges that appellee desired to handle cars of less capacity and a less selling price than the Rapid, and appellant represented to it that it was placing on the market a commercial car that would fill appellee's requirements; that appellant was manufacturing its cars at York, Pennsylvania, and represented to appellee that, if it would purchase certain of its cars and take a sales agency for Indiana, with the exception of a limited territory, it would execute a certain guaranty; that thereupon, on March 5, 1909, a written contract was executed by the parties, which is set out, and provides that appellee, designated as "dealer", shall have the right to sell, and appellant designated as "company" will sell to it "the following styles and types of commercial power wagons, namely, A-0, A-1, A-2, A-3, A-4, for the territory and at the prices and terms as stated in a memorandum attached, reading as follows:

(a)   That the territory under this contract shall be
*    *    *    all of    *    *    *    Indiana excepting the
Counties of Lake, Porter, Laporte, St. Joseph, Elkhart,
Lagrange and Steuben.    *    *    *    (b) That the under-
signed, the dealer, hereby orders and agrees to take the
following quantities of the styles and types of Hart-
Kraft commercial power wagons, as are designated in
the contract, to which this is attached, at the prices and
terms as stated below and within the period of time
embraced in the contract; the deposit as per terms of
said contract to be due and payable at the time of ac-
ceptance of same by the Hart-Kraft Motor Co.

| Quantity | Model | Retail | Dealers |
|---|---|---|---|
| 3 | A-3 | $1,200.00 | $960.00 |
| 1 | A-4 | 1,225.00 | 980.00 |

and the option to purchase at list-price less 20%, twenty-
five (25) additional models specifications together with
deposits on three (3) of which to be submitted not later
than March 15th, 1909.   One model A-3 to be delivered
at once, 2 model A-3, 1 model A-4 to be shipped not
later than April 1st, 1909.   (c)  This agreement does not
cover, or grant selling rights on vehicles of special de-
sign or construction, or any vehicle not regularly cata-
logued and mentioned in the body of this contract, all
the above being subject to special agreement.
Terms:   Net cash, or sight draft on bill of lading for
balance due f. o. b. shipping point.''

The contract further provides that orders from the dealer
may be accepted subject to delay in completion caused by
strikes, etc.; that the dealer with each order shall make pre-
payment or pay therefor on shipment or presentation of
sight draft with bill of lading attached; that accounts for
parts shall be due on the fifteenth of the month following
shipments; that claims under the guarantee must be made
according to rules mailed dealer; that the dealer must work
for the sale of the company's wagons to the best of its ability,
and must not sell wagons or parts thereof at less than prices
named in retail price lists.

The guaranty, applying only to wagons maintained under
said maintenance contract, and under the dealer's direct
supervision, is as follows:

"We guarantee all parts of our power wagons, except rubber tires, for a period of one year following the date of shipment, against inherent defects and breakages of defective materials and will replace free of cost, f. o. b. factory, broken parts if defects are shown; defective or broken parts to be returned to factory, charges prepaid."

It is further averred that appellee paid appellant $3,862 for the four wagons described in the contract, and afterwards on June 19, 1909, purchased two cars of model A-4, and one car of model A-3, for which it paid appellant the sum of $2,920; that appellee sold two model A-3 cars for $2,400 to the Excelsior Laundry Co., of Indianapolis, and one model A-4 car for $1,200 to the Progress Laundry Co., of Indianapolis, and said purchasers at the time executed maintenance contracts for the keeping of the cars, and they were thereafter used in the usual and ordinary manner; that within ten days thereafter, many defects appeared in each of the cars, and appellee at once notified appellant thereof and shipped to appellant the defective parts, with charges prepaid and in compliance with the conditions of the contract, but appellant failed to replace them or was so dilatory in replacing them that appellee was compelled, pursuant to the provisions of the maintenance contracts, to remove certain parts of the four unsold cars to supply the places of the defective parts; that from time to time appellee returned to appellant certain inherent defective parts of the three cars, which should have been replaced free of charge, but that appellant demanded payment for such replacements, to the extent of more than $300; that the parts, for the value of which appellant sues, are the replacements so demanded of it by appellee under its guarantee; that said cars were inherently defective, and were unable to stand the wear and tear of ordinary usage; that practically all of the four cars were used in keeping the three cars in repair, and in addition thereto appellee was compelled to keep a force of expert mechanics at such task, at an expense of

$700; that the work of keeping the three cars in repair continued until December 1, 1909, when it was compelled to and did take back the three cars sold and refunded to the purchasers the purchase price paid; that thereupon appellee notified appellant of said facts, and offered to return the three cars and what was left of the four unsold ones, and demanded a return of the purchase price of the same, together with six per cent interest thereon and sums expended in the effort to keep the same in repair; that appellant refused, and appellee thereafter demanded of appellant that it remove the seven cars from its place of business, and that on failure to comply therewith, it would sell them at such price as might be obtainable and credit the amount received on its demand against appellant; that appellant refused to remove the cars, and afterward appellee sold the same for $700 and acknowledges a credit therefor on its demand; that by reason of the foregoing facts, appellee demands judgment for $10,000.

Substantially the same facts are averred in the other paragraph of counterclaim. Appellant's demurrer to each paragraph was overruled. There was a trial by jury and verdict and judgment for appellee in the sum of $6,500. Error is predicated on the action of the court in overruling the demurrers to each paragraph of counterclaim and in overruling appellant's motion for a new trial.

The principal question in controversy depends on whether there was a warranty that the power wagons were reasonably suitable for the purpose for which they were purchased, and if so, whether a breach thereof has been properly pleaded. Expert evidence was admitted which shows that the design of the wagons was so faulty as to preclude their successful operation as commercial wagons. Appellant contends (1) that there is in the contract no express warranty that will cover the fitness of the machines for the purpose intended and (2) that where, as here, there exists an express warranty, an implied one of fitness is excluded.

Hart-Kraft Motor Co. *v.* Indianapolis Motor Car Co.—183 Ind. 311.

On a sale of machinery by a manufacturer to a dealer, there is usually implied a warranty that the machine is reasonably adapted to the purpose for which it was purchased. *Poland* v. *Miller* (1884), 95 Ind. 387, 48 Am. Rep. 730; 35 Cyc. 408. We are of the opinion, however, that the terms of the express guaranty do not cover the question of fitness of the wagons for the intended use, and the serious question arises whether the express warranty contained in the written guaranty excludes implied ones, on the theory that it must be presumed that the parties intended to exclude all warranties not included in the written contract. It is thoroughly settled that parol evidence can not be heard to vary the terms of a written contract, and consequently the provisions of the express terms of the guaranty can not be contradicted or varied by parol. It has been stated by this court, in general terms, that all implied warranties are merged in the written contract. *Shirk* v. *Mitchell* (1894), 137 Ind. 185, 36 N. E. 850; *Conant* v. *National State Bank* (1889), 121 Ind. 323, 22 N. E. 250. To this general rule there are some exceptions. It is apprehended that at this time it would be universally held that where one is in possession and sells a machine under an express written warranty of sound construction, an implied warranty of title would not thereby be excluded. In recent years many courts have held that where the implied warranty of fitness is wholly independent of the matter contemplated by the express one, both warranties may exist, and this rule is specially applicable to sales made by manufacturers to retailers where the express warranty relates only to some particular quality. *Loxterkamp* v. *Lininger Implement Co.* (1910), 147 Iowa 29, 125 N. W. 830, 33 L. R. A. (N. S.) 501, and case note; *Main* v. *Dearing* (1905), 73 Ark. 470, 84 S. W. 640; *Bucy* v. *Pitts Agricultural Works* (1893), 89 Iowa 464, 56 N. W. 541; *Elgin Jewelry Co.* v. *Estes & Dozier* (1905), 122 Ga. 807, 50 S. E. 939; *Aultman, Miller & Co.* v. *Hunter*

(1900), 82 Mo. App. 632; *Boulware* v. *Victor Automobile Mfg. Co.* (1911), 152 Mo. App. 567, 134 S. W. 7; *Geo. E. Pew Co.* v. *Karley* (1912), 154 Iowa 559, 134 N. W. 529; *Hansmann* v. *Pollard* (1911), 113 Minn. 429, 129 N. W. 848. In *Carleton* v. *Lombard, Ayres & Co.* (1896), 149 N. Y. 137, 43 N. E. 422, a distinction was made between contracts for the sale of specific articles and executory contracts for the manufacture of some particular article. In England it has been held that the doctrine of exclusion does not apply to implied warranties where the express one appears to have been superadded for the benefit of the buyer. *Mody* v. *Gregson* (1868), L. R. 4 Exch. *49.

It will be noted that here appellee was authorized to sell appellant's machines in nearly all of Indiana, and that the guaranty could only apply to such Indianapolis sales as came under appellee's maintenance contracts, and that appellee was bound to sell the machines at the prices stipulated in the agreement. We are of the opinion that the implied warranty of fitness was not excluded by the terms of the written contract, and that a breach of such warranty is sufficiently pleaded. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. There was no error in overruling the demurrers, and there was some evidence to sustain the material allegations of the counterclaims.

It is shown by the evidence that appellee relied on a waiver of the conditions of the contract in regard to a return of defective and broken parts and the court instructed 4. the jury on such subject by its instruction No. 7.

Appellant claims that as there was no pleading of a waiver, it was error to instruct the jury on a question outside the issues. We do not consider the question of pleading presented because if there was error in the instruction it was invited by appellant's requested instruction No. 10, on the same subject, and appellant can not complain. *Orient Ins. Co.* v. *Kaptur* (1911), 176 Ind. 308, 95 N. E. 230.

There was evidence to sustain the finding of the jury as to the amount of damages sustained by appellee. There was no error in overruling the motion for a new trial. Judgment affirmed.

NOTE.—Reported in 109 N. E. 39. As to parol evidence to show warranty outside of contract, see 5 Am. St. 197. As to an application of warranty in a contract of sale to goods not in existence when the contract is made, see 6 Ann. Cas. 115. See, also, under (1) 35 Cyc. 399; (2) 35 Cyc. 392; (3) 35 Cyc. 392, 450; (4) 38 Cyc. 1788.