## MICHIGAN PIPE COMPANY *v.* SULLIVAN COUNTY WATER COMPANY ET AL.

[No. 23,372.   Filed June 18, 1920.   Rehearing denied December 17, 1920.]

1. SALES.—*Express Warranty.—Definition.*—An express warranty is created by an express contract between the parties and is subsidiary to the principal contract of which it forms a part. p. 21.

2. SALES.—*Implied Warranty.—Definition.—Caveat Emptor.*— An implied warranty arises where the relations between the parties, the subject-matter of the principal contract and the circumstances under which it was made, are such as to justify the court in imposing on the seller the obligation of a warranty of the quality of the thing sold, since the doctrine of implied warranty is an exception to the rule, *caveat emptor.*   p. 21.

3. EVIDENCE.—*Sales.—Written Contract.—Verbal Warranty.*— Where the contract of sale is in writing, an express warranty cannot be shown by parol.   p. 21.

4. EVIDENCE.—*Sales.—Implied Warranty.—Evidence of Facts to Establish.*—An implied warranty on the sale of goods cannot be established by evidence of an express warranty, but only by proof of facts, circumstances and conditions from which an implication arises.   p. 22.

5. EVIDENCE.—*Sales.—Contract Clear and Explicit.—Parol Evidence Inadmissible.*—In an action on a written contract of sale of wooden water pipe, clear and explicit in its specifications of the kind and quality of pipe to be furnished, parol evidence that before the contract was entered into, the buyer read to the seller's agent the franchise ordinance containing the requirements imposed on the buyer in furnishing water to the city and informed such agent that the pipe was intended to accomplish the purposes of such ordinance, to which the agent assented and declared that the seller would be responsible that the pipe perform that service, was inadmissible, either to affix to the contract an express warranty, or to prove an implied warranty, which can only arise by force of law and not by virtue of express contract.   p. 24.

6. SALES.— *Written Contract.— Provisions Control.— Implied Warranty.*—The rule that a manufacturer or dealer who sells an article with knowledge of the use for which it is intended, will be held to have impliedly warranted its fitness for such use, will not be extended to raise an implication in conflict with any

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

provision of a written contract of sale, and where the article is specifically described in the contract, or is to be of a particular design or pattern well defined or understood between the parties, and conforms in all respects with such description, no implied warranty will be raised even though the buyer made known to the seller the purpose for which the article was intended. p. 25.

7. SALES.—*Written Contract.—Warranty Expressed Excludes Implication.*—Where a written contract of sale contains an express warranty on a subject, no warranty will be implied on the same subject. p. 26.

8. SALES.—*Selection by Seller.—Implied Warranty.*—Where the buyer makes known to the seller the intended use of the article, and relies on the superior knowledge of the seller and leaves him free to exercise his judgment in manufacturing or selecting an article suitable for such purpose, the law implies a warranty that the thing furnished is reasonably fit and suitable for the use intended. p. 26.

9. APPEAL.—*Theory.—Evidence to Support Another Theory.—Reversal.*—Where the pleadings and the trial mistakenly proceeded upon the theory of breach of an implied warranty on a written contract of sale, a reversal cannot be avoided on the ground that there is evidence in the record sufficient to sustain the judgment on the theory of a breach of the express warranties and conditions of the written contract, since the Supreme Court has no means of knowing that the trial court would have reached a like result if the pleadings and evidence had been directed and confined to the theory suggested. p. 27.

From Clay Circuit Court; *John M. Rawley,* Judge.

Action by Michigan Pipe Company against Sullivan County Water Company and another. From a judgment against plaintiff upon its complaint and for defendant water company upon its counterclaim, the plaintiff appeals. *Reversed.*

*Ferdinand Winter, Hutchinson & Burns, Charles D. Hunt* and *Gilbert W. Gambill,* for appellant.

*Buff & Stratton, Hays & Hays* and *Curtis G. Scofield,* for appellees.

LAIRY, J.—Appellant company brought this action to recover on three promissory notes, the face value of

**16** SUPREME COURT OF INDIANA,

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

which was $875. The notes in suit evidenced a balance due from appellees to appellant for machine banded, wood stave pipe furnished by the latter to the former at an agreed price under a written proposal made by appellant and accepted by appellee.

The sufficiency of the three paragraphs of complaint was not challenged by demurrer, and the issues thereby tendered were closed by a general denial filed by appellees.

Appellee water company also filed a paragraph of counterclaim and a cross-complaint by each of which appellee claimed damages for the breach of an implied warranty as to the quality of pipe purchased by it. Issues were joined on the counterclaim and cross-complaint and all of the issues were submitted to the court for trial, resulting in a finding and judgment against appellant on its complaint and in favor of appellee water company on its counterclaim in the sum of $27,500.

The errors assigned are that the trial court erred in overruling appellant's motion for a new trial and overruling its motion to modify the judgment.

The counterclaim and cross-complaint are each based on a written proposal made by appellant and a written acceptance of such proposal by appellee. It thus appears that the entire contract under which the pipe was furnished was in writing.

On the subject of the contract, the cross-complaint alleges: "That said Michigan Pipe Company then and there made and delivered to this cross-complainant the following written offer to sell said pipe to the cross-complainant, to wit:

"Proposal for furnishing 47,500 ft. approximately 12 inch, machine banded wood stave pipe for 130 pounds pressure.

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

"Indianapolis, Ind. Oct. 1, 1912.

"We, the Michigan Pipe Company of Bay City, Michigan, propose to furnish the Sullivan County Water Company of Sullivan, Indiana, approximately 47,500 lineal feet of 12 inch inside diameter machine banded wood stave pipe to withstand factory test of 175 lbs. pressure per square inch at sixty-six cents (66 cents) per lineal foot F.O.B. cars Bay City, Michigan, freight allowed to Sullivan, Indiana. Pipe is to be measured as it will lay in the trench that is not including tenons. The amount of pipe mentioned above may be increased or decreased according to the plans of the engineer same price holding. The above mentioned pipes shall be manufactured according to the following specifications.

Timber:
Staves shall be manufactured from best quality white pine timber as many lengths as possible 12 feet long and equipped with double tongue and groove on the lateral sides and moulded on the outer and inner surface to conform to the outside and inside circumference of the pipe. All staves shall have a finished thickness of at least 1⅞ inches and shall be free from shake black or unsound knots and defects.

Banding:
Best quality steel hoops shall be used free from rust or scale, and having a tensile strength of between 58,000 and 65,000 lbs. The hoops shall be wound spirally on the pipe with double wrapping on each to insure additional strength at the joints sufficient hoop being applied to bring a maximum tension of 15,000 lbs. at the specified pressure or in other words providing for a factor of safety of four. Description of hoop to be used shall be from one to two inches in width and gauges from fourteen to eighteen Birmingham as desired.

Joints:
The pipes shall be equipped with a mortise on one end and a tenon on the other end. These joints shall equally divide the shell of the pipe and be four inches long. The joints shall be painted with residum oil before loading into cars.

VOL. 190—2

18    SUPREME COURT OF INDIANA,

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

Coating:
The pipe after being headed shall be rolled in a hot asphaltum pitch then coated with fine sawdust. This operation shall be repeated in order that the pipe have a double thickness and insure better protection for the band. The ends of the pipe shall be carefully trimmed after this process.

Workmanship:
Great care shall be taken to insure the best of material and workmanship. The staves entering into the pipes shall be subjected to at least three inspections. No pipes shall be shipped from the factory with rough or defective joints.

Extra Asphaltum:
We propose to furnish free of charge extra asphaltum to be used along the trench to spread over the joints or replace wherever the original coating has been marred in unloading or laying.

Complaint for damages:
We shall enter claim for damaged pipe against the railroad company where cars have been roughly handled upon signed affidavits from the agent at designation point to the effect that certain pipes were found damaged in certain cars. These pipes shall be carefully noted, measured and returned for repairs.

Terms:
Payment shall be made on a basis of two per cent. cash within ten days from date of invoice.

Bond:
We propose to furnish bond to the amount of five thousand dollars, terminating in one year, conditions of same being that we will replace any defective pipes and repair or cause to be repaired at our expense all visible leaks under the normal working pressure of the line which is to work against 180 foot maximum head plus pipe friction, it being understood that there shall be no dead end, due to defects in laying or construction.

Inspector:
We will furnish a competent man to supervise the laying of the pipes without charge. He shall remain on the work until the engineer and Michigan Pipe Company decide that his services are no

NOVEMBER TERM, 1920.        19

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

longer required in the proper laying and caring for the pipe.

Laying:

The pipes shall be laid carefully in a level trench. Care shall be taken that the joints are square up, shoulder to shoulder, with no openings, air valves shall be attached at frequent intervals along the line whereever air pockets are liable to form. The back filling shall follow the pipe laying as quickly as practical, and no large chunks of frosted earth shall be thrown on top or alongside of the pipe. Pipes with broken tenons or mortises shall not be laid until repaired, if such a thing be possible according to our inspector.

> "The Michigan Pipe Company,
> "Eugene H. Smith, Vice-President.

"And this cross-complainant then and there accepted said written offer of the Michigan Pipe Company, to sell said pipe to this cross-complainant and indorsed on the bottom of said written offer the following acceptance, viz.:

"Accepted by the Sullivan County Water Company by E. M. Kerlin, Sec'y.

"The above acceptance is subject to the approval of the sample of pipe to be expressed being satisfactory."

> "E. M. K.
> "E. H. S."

It is further alleged that on October 1, 1912, the cross-complainant was under contract to furnish and deliver water from its pumping station to the city of Sullivan, Indiana, in sufficient quantities to supply that city and its inhabitants with water for fire, domestic and other purposes. That, under the franchise then held by cross-complainant with the city of Sullivan, it was obliged to obtain water from the gravel bed of the Wabash river in the vicinity of Riverton in said county and convey the same to the city of Sullivan, and there to maintain a water system of sufficient capacity to discharge four streams of water at the same time, through

20     SUPREME COURT OF INDIANA,

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

200 feet of two and one-half inch rubber lined hose with one and one-eighth inch smooth nozzle, to a height of seventy-five feet, and at the same time maintain a pressure of not less than seventy-five pounds to the square inch at hydrants at all times when required for extinguishment of fires, and at all other times to maintain a pressure of not less than thirty-five pounds to the square inch in the water mains of said city. The cross-complaint alleges, in substance, that prior to making of the written contract appellant was informed of all the facts stated and of all the circumstances and conditions under which said water was to be transported from the pumping station of appellee to the city of Sullivan, and knew that the pipe to be furnished and paid for under the proposition and acceptance set out was intended to be used for the purpose of conveying water from said pumping station to the city of Sullivan and to supply it to that city and its inhabitants in accordance with the provisions of the franchise agreement and with the pressure specified therein. It is also alleged that appellant, at the time, was engaged in the manufacture and sale of pipe to be used in conveying and transporting water for long distances, under high pressure and in large quantities.

It is then alleged, in substance, that appellee thereby warranted said pipe to be fit and suitable for transporting said water, without leaking, from said pumping station to the city of Sullivan and into the water mains of that city in such quantities and under such pressure as to be capable of discharging four streams of water at the same time, through 200 feet of two and one-half inch rubber lined hose with one and one-eighth inch smooth nozzle, to a height of seventy-five feet; and at the same time to be capable of maintaining a pressure of not less than seventy-five pounds to the square inch at hydrants at all times when required in ex-

tinguishing fires, and at all other times a pressure of not less than thirty-five pounds to the square inch in the water mains.  It is further alleged that appellee accepted the written proposition of appellant with the understanding that the pipe to be furnished thereunder would be of such quality, strength and capacity as would transport water in such quantities and under such a pressure as would enable appellee to comply with the terms of its franchise agreement with the city.  Both the cross-complaint and counterclaim rest on this alleged warranty and its breach and seek to recover damages resulting therefrom.

Warranties are either express or implied.  An express warranty is created by an express contract between the parties and is subsidiary to the principal contract of which it forms a part.  An implied warranty is an obligation of like nature which arises by force of law in certain cases and under certain conditions and circumstances, where relations between the parties, the subject-matter of the principal contract and the circumstances under which it was made are of such a character as to justify the court in imposing on the seller by force of law the obligation of a warranty as to the quality of the thing sold.  In sales of personal property *caveat emptor* is the rule; implied warranties constitute an exception.

Where the principal contract is in writing, no *express* agreement constituting a warranty can be shown by parol evidence.  All such subsidiary contracts constitute a part of the principal contract; and, as the principal contract is in writing, it is presumed to contain the entire agreement between the parties, and it can not be enlarged or varied by parol evidence.  For the reasons stated an *express* warranty cannot be shown by parol evidence where the principal contract is in writing.  *Conant* v. *Nat. State Bank, etc.*

(1889), 121 Ind. 323, 22 N. E. 250; *Brown* v. *Russell & Co.* (1886), 105 Ind. 46, 4 N. E. 428; *McCormick, etc., Co.* v. *Yeoman* (1901), 26 Ind. App. 415, 59 N. E. 1069; *Shirk* v. *Mitchell* (1894), 137 Ind. 185, 36 N. E. 850.

In this case the principal contract was in writing and the warranty on which appellee relies is not embodied in the written contract. As no express warranty can be established by parol evidence, the judgment in favor of appellee must be sustained, if at all, on the theory that the law imposed on the seller the obligations of an agreement or undertaking that the pipe sold should be of sufficient capacity and strength to convey water in sufficient quantity and under a pressure sufficiently high to enable appellee to comply with its franchise contract with the city. Such an obligation to furnish an article reasonably fit for a known purpose may arise as an implication of law; but when such is the case, it is evolved from a consideration of the nature of the thing sold, the connection of the seller with the production, manufacture or sale of the article, the opportunities of the buyer to inspect the article before purchasing, and the reliance, if any, placed by the buyer in the superior knowledge or judgment of the manufacturer or dealer with whom the contract is made. Other considerations not mentioned may possibly have a bearing on the question, but it has been the purpose to refer to those most frequently mentioned in this connection.

A warranty arising by implication of law cannot be established by evidence to show an express contract of warranty. Such a warranty can be established 4. only by proof of facts, circumstances, and conditions from which such an implication of law arises. *Osgood* v. *Lewis* (1829), 2 Har. & G. (Md.) 495, 18 Am. Dec. 317.

NOVEMBER TERM, 1920. 23

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

The only questions presented arising under the motion for a new trial relate to admission of parol evidence over the objections and exceptions of appellant. The foregoing discussion is intended to make clear the only issue presented to which such evidence could be possibly directed, and to indicate the general character of evidence admissible under such an issue together with some of the limitations applicable thereto, the purpose being to afford some rule or guide by which to determine the competency of the evidence admitted in this case.

The complaint does not proceed on the theory that the pipe furnished was not of the kind and description specified in the written proposition, or that there was any imperfection in the construction, workmanship, or material, or that it was otherwise defective. The written contract set out in the pleadings is clear and explicit in terms and is not uncertain or ambiguous in any particular. As the contract is not open to construction, resort to parol evidence could not be proper for the purpose of enabling the court to construe the contract in the light of facts and circumstances surrounding and leading to its execution, or for the purpose of showing a practical construction placed on such contract by the parties. It is clear that parol evidence in this case could have been introduced for no other purpose than to prove a state of facts, conditions and circumstances giving rise to the legal implication of a warranty by which appellant undertook to furnish pipe sufficient and adequate to withstand a water pressure which would be sufficient to enable appellee to comply with the terms of its franchise contract with the city in respect to the pressure to be furnished.

To sustain the affirmative of this issue appellee was permitted to introduce in evidence the franchise contract between appellee water company and the city of

Sullivan, and to prove by Mr. Kerlin that he, as representative of the water company, had a conversation with a Mr. Smith, who was a representative of the appellant, in which the witness read to Mr. Smith all that part of the franchise relating to requirements as to pipe and the water pressure to be furnished thereunder. The witness testified that this conversation took place shortly before the written contract set out in the pleadings was entered into.   The witness was then permitted to state, in response to a question propounded by attorneys for appellee, that Mr. Smith said "that the pipe was intended, or at least, the pipe they proposed furnishing us, was to stand a pressure of 130 pounds; that it was equal in every respect, for the purpose for which we wanted it, to class C iron pipe and that they would stand back of it to perform that service." The witness further said, in response to the same questions:   "That was in connection—following my reading to him of the obligations we were under to the city to furnish this water to it and after giving him the elevation, he said we need have no fear whatsoever of the pipe but what it would give us as good service and, in fact, it had a greater carrying capacity and was more easily laid, was just as durable and in addition to that they would stand back of it and see that it was in repair in case anything of that kind did develop after we put it in use." Appellant objected and saved a proper exception to the ruling of the court admitting this testimony.

The effect of this testimony was to prove an express agreement and an undertaking by the appellant to the effect that the pipe to be furnished should be 5. suitable and adequate for the purpose to which it was to be put under the terms of the franchise contract, and that it would furnish the pressure required by the terms of that contract.   It further showed an express undertaking on the part of appellant that

the pipe to be furnished should be in all respects equal to class C iron pipe. Appellee was also permitted to prove the strength and resisting power of class C iron pipe as against water pressure. All such evidence tended to prove an express warranty. It was incompetent and inadmissible for that purpose for the reason that an express warranty cannot be proved by parol to vary the terms of a written contract; and it was not admissible for the purpose of proving an implied warranty as such warranties arise by force of law and not by virtue of express contract. For the reasons stated the parol evidence as to the express warranty should have been excluded. What has been said as to this evidence applies to other evidence of a like character not set out in the opinion.

It has been frequently stated, as a general proposition, that, where an article is manufactured or sold for a special purpose, the manufacturer or dealer, who makes the sale of such article with knowledge of the purpose for which it is to be used, will be held to have impliedly warranted the article to be reasonably suitable and fit to serve the purpose for which it is manufactured and sold. *Poland* v. *Miller* (1884), 95 Ind. 387, 48 Am. Rep. 730; *Hart-Kraft Motor Co.* v. *Indianapolis Motor Car Co.* (1915), 183 Ind. 311, 109 N. E. 39; *Oil-Well Sup. Co.* v. *Watson* (1907), 168 Ind. 603, 80 N. E. 157, 15 L. R. A. (N. S.) 868; *Penn, etc., Glass Co.* v. *De La Vergne Mach. Co.* (1914), 58 Ind. App. 333, 106 N. E. 722.

The general statement thus made is subject, however, to certain well-recognized limitations and exceptions.

6. Where the contract of sale is in writing, the law will not raise, by implication, any warranty which, by its terms, would conflict with any provisions of the written contract.

Where the article manufactured and sold is spe-

26    SUPREME COURT OF INDIANA,

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

cifically and definitely described in the contract, or where it is to be a particular design or pattern well defined and understood between the parties, and where the thing furnished conforms in all respects with the description as specified in the contract, the law will not raise an implied warranty that it shall answer the particular purpose for which the buyer intends to use it, even though the buyer makes known to the seller the purpose for which the article is intended. *Seitz* v. *Brewers', etc., Co.* (1891), 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837; *Davis Calyx Drill Co.* v. *Mallory* (1905), 137 Fed. 332, 69 C. C. A. 662, 69 L. R. A. 973; *Baer Grocer Co.* v. *Barber Milling Co.* (1915), 223 Fed. 969, 139 C. C. A. 449; *City of New York* v. *Penn. Steel Co.* (1913), 206 Fed. 454, 124 C. C. A. 360.

When a written contract contains an express warranty on a certain subject, the writing will be presumed to express the entire agreement between the parties on that subject. In such case, the law will not raise an implied warranty on the same subject. To do so would be to enlarge, restrict, or otherwise change the express terms of the written contract by implication of law. *Conant* v. *Nat. State Bank, etc., supra; Penn, etc., Glass Co.* v. *De La Vergne Mach. Co., supra; Bucy* v. *Pitts Agricultural Works* (1893) 89 Iowa 464, 56 N. W. 541.

Where a person desiring to purchase an article for a particular purpose applies to a manufacturer or dealer in such articles and informs him of the specific purpose for which he desires to use the article to be purchased, relying on the superior knowledge and judgment of the seller, and leaving the seller free to exercise his judgment in manufacturing or selecting an article suitable for such purpose, the law implies a warranty by the seller that the thing furnished is reasonably fit and suitable to serve the known

purpose for which it is intended. *McClamrock* v. *Flint* (1884), 101 Ind. 278. In the case before the court, the written contract specifically describes the pipe to be manufactured and furnished. The written contract provided that the pipe should be twelve inches inside diameter, machine banded, wood stave pipe to withstand a factory test of 175 pounds to the square inch. The quality and the thickness of the staves to be used in the manufacture of the pipe are specified in the contract as well as all matters relating to the manufacture and inspection of the pipe to be furnished. The seller further specifically agreed for the period of one year to replace all defective pipes and repair all visible leaks in the pipe occurring under the normal working pressure of the line which was to work against a maximum head of 180 feet plus pipe friction.

The pleadings do not proceed on the theory that there was a breach of the express written warranties, and the case does not appear to have been tried on that theory. The pleadings were drawn and the case was tried in the trial court on the theory of a breach of an implied warranty by the seller that the pipe furnished should work successfully and withstand a pressure sufficient to enable the water company to furnish the pressure provided by the terms of the franchise granted to it by the city of Sullivan. The judgment cannot be sustained on that theory.

It is asserted on appeal that there is evidence in the record sufficient to sustain the judgment rendered, on the theory of a breach of the express warranties and conditions of the written contract. This court has no means of knowing that the trial court would have reached a like result if the pleadings and evidence had been directed and confined to the theory suggested. There is nothing in the record to indicate that the case was tried or the judgment rendered on the theory sug-

28 SUPREME COURT OF INDIANA,

Michigan Pipe Co. *v.* Sullivan County Water Co.—190 Ind. 14.

gested, and the judgment cannot be affirmed on such a theory.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.

### ON PETITION FOR REHEARING.

LAIRY, J.—The brief of appellee on petition for rehearing evinces a misconception of the opinion of the court. From a careful re-examination of the opinion the court is convinced that the construction placed on it by appellees is unwarranted.

On petition for rehearing appellees assert that the court, in its discussion of implied warranties, confuses implied warranties as to quality with implied warranties as to fitness for a known purpose; and that the rule applicable to the former class is applied in the decision of this case which involves an implied warranty of fitness for a given purpose. The fitness of an article for a given purpose frequently depends upon qualities which render it fit or unfit for such purpose. When a seller undertakes that he will furnish an article suitable for a known purpose under circumstances which give rise to an implied warranty, the warranty implied is that the article shall possess the qualities making it fit or suitable for that purpose.

In the instant case appellees required pipe for the purpose of conducting water from its place of supply to the city of Sullivan, where it was to be distributed and furnished under the provisions of an ordinance contract with that city. This contract required that a specified pressure should be maintained at the fire hydrants and in the mains under conditions specified in the contract. The strength of the pipe to be used and its power to withstand pressure were qualities essentially requisite to its fitness for the purpose. The allegations of the complaint show that the pipe fur-

nished was not suitable for the use intended, for the reason that it did not possess sufficient strength or power of resistance to withstand the pressure which was required to enable appellees to furnish the water to the city under the pressure required by the terms of its ordinance contract, and that in consequence it leaked to such an extent as to make it worthless for the purpose for which it was purchased and used.

By the written contract appellant agreed to furnish pipe in accordance with the specifications of the contract, and they undertook by the terms of said written contract that the pipe to be furnished should withstand a factory test of 175 pounds pressure to the square inch, and proposed to furnish bond to run for one year, conditioned that it would replace all defective pipes and repair all visible leaks under the normal working pressure of the line, which was to work against 180 feet maximum head plus friction. It thus appears that there was an express agreement in writing as to the power of resistance to pressure which should be possessed by the pipe to be furnished. This amounts to a written warranty that the pipe should possess the quality of resistance to pressure to the extent specified. Such a provision in the written contract precludes any legal inference of an implied warranty that it would withstand any other or different pressure than that specified.

Petition denied.