TOLEDO PLATE & WINDOW GLASS COMPANY *v.* SMOGER LUMBER ET AL.

[No. 14,808.  Filed May 7, 1935.  Rehearing denied October 18, 1935.]

*Thad M. Talcott, Jr.,* and *Walter R. Arnold,* for appellant.

*Louis M. Hammerschmidt,* and *Joseph V. Wypizynski,* for appellees.

Appellee, Kosciusko Building and Loan Association entered into a contract with appellee, Smoger Lumber Company, whereby the lumber company agreed to construct a building for the loan association on real estate belonging to it. While the building was in progress of

construction the lumber company entered into a contract with appellant whereby it was to furnish at an agreed price of $537.00, plate and mirror glass of various descriptions for use in the construction of said building.

All plate glass and mirrors were delivered by appellant in boxes upon the premises where the building was in process of construction by the 11th day of July, 1929.

On or about the 1st day of August, 1929, the mirrors were unpacked from the boxes and installed by the lumber company, as contractor, in the building. The installation consisted of introducing the mirrors into false window framing recesses in the brick walls, having been left for that purpose, and framing around the mirrors. In all there were 84 mirrors which required two men three or four days to install and none of which mirrors, prior to their installation, were inspected by either the contractor or architect.

A few days after the installation of the mirrors which, at the time of the installation, had dirty and dusty surfaces, the architect and secretary of the loan association observed what appeared to be murkiness in the mirrors and brush and stencil marks.

On the 21st day of September, 1929, the contractor communicated to the appellant the complaint of the loan association that the mirrors were defective. The contractor had already paid on account to the appellant $337.00 leaving a balance of $200.00 which was being held back by the loan association because of the defective mirrors. The appellant then examined these mirrors, offered to resilver them, and pay the freight to and from Toledo, Ohio, if the contractor would take them out of their recesses and replace them therein at the contractor's expense, on their return from appellant's factory. The contractor refused to pay for the

removal and replacement so as to this proposition nothing more was done.

In January, 1930, the contractor demanded of appellant that it remove all the mirrors and replace the same, standing the cost of removal and replacement. Appellant then removed one mirror which, according to its agent, contained defective glass, as distinct from defective silvering of which appellee complained, and replaced the same, but declined to remove and replace the remainder but again offered to stand the cost of resilvering and the freight both ways to and from its place of business in Toledo. This proposition was again refused.

On February 18, 1930, appellant filed a notice, directed to the loan association and the contractor, of its intent to hold a mechanic's lien against the property of the loan association to secure the payment of the balance of $200.00 and interest. Suit was brought to foreclose this lien on the 24th day of June, 1930.

To the complaint the contractor filed a cross-complaint alleging the defects in the mirrors; that the mirrors were sold to the contractor by the appellant pursuant to certain specifications; that the loan association declined and refused to pay for the construction of said building because of the defective mirrors; that the value of the mirrors in good condition would have been $312.80; that it will cost the contractor $120.00 to replace and remove them to its damage in the sum of $432.80 for which it asked judgment.

A general denial was filed by appellant together with a second paragraph of answer to the cross-complaint alleging that the contractor waived any and all grounds for rejecting the mirrors or for any action on account of defects, by accepting the mirrors and incorporating them in the building, after it had ample opportunity for inspection and rejection thereof for the defects

claimed. The issues were closed by a general denial to this second paragraph of answer.

Trial was had by court and he found that appellant take nothing by its complaint and that the contractor recover on its cross-complaint and entered judgment for the contractor against the appellant for $405.00 together with the costs of this action.

Appellant's motion for new trial contained the following grounds: (1) that the decision of the court is not sustained by sufficient evidence; (2) that the decision of the court is contrary to law; (3) that the court awarded excessive damages against the plaintiff; and (4) that there was error in the assessment of the amount of recovery against plaintiff, the same being too large. The overruling of this motion is assigned as error on appeal.

After stating the facts, KIME, J., rendered the following opinion.

Appellant contends that the contractor waived the defects observable in the mirrors by accepting and incorporating them in the building and cites the case of *Pottlitzer et al.* v. *Wesson et al.* (1893), 8 Ind. App. 472, 35 N. E. 1030. This case is not applicable to the case at bar for the reason that when the merchandise in the Pottlitzer case arrived at the purchasers' place of business, after examination of said merchandise the purchasers communicated with the seller notifying him that the merchandise was not the quality ordered. The seller wired to the purchaser that the merchandise was the quality ordered and that the purchaser must accept it as such. The purchasers then took the merchandise into their possession and sold it.

It can be seen that the purchasers, regardless of the fact that they knew the merchandise to be defective, accepted it as the quality ordered and, consequently, were in no position to object to its imperfections. In

the case at bar the statement for the mirrors is as follows:

"THE TOLEDO PLATE & WINDOW GLASS CO.
Toledo, Ohio
Cutomer's Name      Smoger Lbr. Co.
City,      South Bend,      State,    Ind.
Street County
Estimate No.      Date      Price
Shipping Instructions.
Terms: One per cent discount ten days fro date of invoice; thirty days net. All agreements are contingent upon strikes, accidents or other causes beyond our control.

Glass for Kosciusko Bldg. & Loan Co. *as per plans & spec.* except that 4 mitred mirrors are changed to small mirrors not mitred. No skylight or ceiling lights or fixture glass. (Our italics.) $515.
F. A.
Customer's signature      ROY HAYS
Salesman      C. L. Lowry,    Date 5/1/29."

and an officer of appellant testified that he was familiar with the terms of the contract of construction between the contractor and the loan association.

There existed as to such mirrors, as can be seen from the above, an implied warranty as to the fitness for the use to which they were to be put under the contract. *J. F. Darmody Co.* v. *Moss* (1927), 86 Ind. App. 426, 158 N. E. 489; *Zimmerman* v. *Druecker* (1896), 15 Ind. App. 512, 44 N. E. 557; *Conant et al.* v. *The State Nat'l. Bank of Terre Haute et al.* (1889), 121 Ind. 323, 22 N. E. 250. A purchaser has a right to rely upon the warranty and it is immaterial whether the purchaser had an opportunity to examine the goods or not. *The First Nat'l. Bank of Kansas City* v. *Grindstaff et al.* (1873), 45 Ind. 158. "It is settled law that when an article of merchandise is to be supplied to a purchaser thereof by the manufacturer for a definite use or purpose and that particular

use is known to the seller, there is an implied warranty that it will be reasonably suitable for the purpose intended by the purchaser." *Edwards Manufacturing Co.* v. *Stoops* (1913), 54 Ind. App. 361, 364, 102 N. E. 980.

Appellant cites several cases to support its proposition that a materialman is not bound by the stipulations in a contract between contractor and owner, however, that proposition is not applicable to the facts here. As an abstract statement of the law it is true that a materialman is not bound by the stipulations in a contract between contractor and owner, but it ceases to be true when other elements enter into a state of facts as in the case at bar. As above shown the evidence disclosed that appellant was familiar with the terms of the contract entered into between the contractor and the loan association and the statement shows that the mirrors were furnished in accordance with the plans and specifications. The contract with reference to materials says that "unless otherwise specified, all materials shall be new and both workmanship and materials shall be of *good quality.*" (Our italics.) The question of "good quality" was a question of fact for the court to determine from the evidence and by his judgment he found that the mirrors were not of good quality. The finding is supported by undisputed evidence.

Appellant further contends that it is not liable on a warranty for defect in materials and cites in support thereof the case of *Michigan Pipe Co.* v. *Sullivan County Water Co.* (1920), 190 Ind. 14, 127 N. E. 768, 129 N. E. 5. This case is not analogous to the case at bar for the reason that in that case the method of manufacture was specifically set out in the contract between the parties and the rule there followed is that "where an article manufactured and sold is spe-

cifically and definitely described in the contract or where it is to be of a particular design and pattern well defined and understood between the parties, and where the thing furnished conforms in all respects with the description as specified in the contract, the law will not raise an implied warranty that it shall serve the particular purpose for which the buyer intends to use it, even though the buyer makes known to the seller the purpose for which the article is intended." In the case at bar the buyer depended upon and contracted with the seller to furnish goods of the quality specified in the specifications, which were known to the seller. The specifications required that mirrors of good quality be furnished. The evidence discloses that this was not done.

This brings us to the last assignment that the damages fixed by the trial court are excessive. There is evidence in the record from which the trial court could have found, as it did, that the damages were $405.00, consequently we find no error in this assignment.

The judgment of the St. Joseph Superior Court is in all things affirmed and it is so ordered.